AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Storage Unit A1049 located at All Right Storage – Otay
Mesa, 1651 Otay Heights Ct., Bldg. A San Diego, CA
92154 (the "Target Location")

)
)
)
)
)
)

Case No.     '23 MJ00187

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of Controlled Substances and Conspiracy to do the Same |
| 21 U.S.C. §§ 841, 846 | Conspiracy to Possess Controlled Substances With the Intent to Distribute |

The application is based on these facts:

See attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Waverly Giannotti, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means).*

Date: _____ 01/19/2023 _____

_____
*Judge's signature*

City and state:  San Diego, California

Honorable David D. Leshner, U.S. Magistrate Judge
*Printed name and title*

## <u>ATTACHMENT A</u>

### DESCRIPTION OF PREMISES TO BE SEARCHED

Storage Unit A1049 located at All Right Storage – Otay Mesa, 1651 Otay Heights Ct., Bldg. A, San Diego, CA 92154 (the "**Target Location**")

The **Target Location** is a storage unit in a multi-story building located at a cul-de-sac at 1651 Otay Heights Ct. Bldg. A San Diego, CA 92154. The building is tan, white, and brown in appearance and has a white roof. The number 1651 is posted on the west side of the building. The terms "All Right Storage" are posted on the west side of the building in red lettering. There are black gates situated around the building.

Below are two photographs of the building to be searched taken from the west side of the building (1) and north side of the building (2).





## **ATTACHMENT B**
ITEMS TO BE SEIZED

There is probable cause that the following constitute evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963; and that they will be found in the **Target Location**:

1.     Controlled substances including but not limited to methamphetamine, controlled pharmaceutical drugs (CPD), fentanyl, and heroin, and items used in the use, production, purchase, sale and transfer of CPDs, including prescriptions, receipts from pharmacies, and receipts from doctor's offices;

2.     Paraphernalia for the packaging and use of methamphetamine, CPDs, heroin, fentanyl, and other controlled substances, including baggies, plastic packaging, paper bindles, tinfoil wrapping, bottles, razor blades, mirrors, inhaling devices, hypodermic syringes and needles;

3.     Items used in the transfer and sale of methamphetamine, CPDs, heroin, fentanyl, and other controlled substances, including scales or other weighing devices, dilutants, and cutting agents;

4.     Financial records, bank records, check books, money orders, money order receipts, U.S. currency, and foreign currency that may be proceeds of drug importation and distribution activities;

5.     Business records such as receipts, buyer lists, seller lists, recordation of sales, address and telephone lists, ledgers, logs, or other records;

6.     Electronic devices, including computers, computer hard drives, discs, "zip" drives, thumb drives, digital media storage devices, cellular phones, tablets, and security cameras and corresponding records that may be used to facilitate drug importation and distribution operations;

7.     Firearms and ammunition;

8.     Documents showing possession, dominion, and/or control of the **Target Location**, including but not limited to bills and statements, telephone records, correspondence, mail, rental or lease agreements, and other documents related to the **Target Location**;

9.     Vehicle registration documents of vehicles used to facilitate the importation and distribution of drugs;

All of the above constituting: (1) evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963; (2) contraband, fruits of the same offenses, or other items illegally

possessed; or (3) property designed for use, intended for use, or used in committing these offenses.

**AFFIDAVIT**

I, Special Agent Waverly Giannotti, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search Storage Unit A1049 located at All Right Storage – Otay Mesa, 1651 Otay Heights Ct., Bldg. A San Diego, CA 92154 (the "**Target Location**"), as more fully described in Attachment A, and seize evidence of crimes and contraband, fruits of crimes, or other items illegally possessed, specifically relating to violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963, as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Edward Castro ESTRADA ("ESTRADA") for importing from Mexico into the United States and conspiring to possess with intent to distribute approximately 3.24 kilograms of methamphetamine. *See United States v. Estrada*, 23CR00058-DMS.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Location**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.      I have been employed as a Special Agent with Homeland Security Investigations (HSI) since May of 2021. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in importation, possession with intent to distribute, and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a

1   working knowledge of the operational habits of narcotics traffickers.

2       5.      I have conducted investigations and participated in investigations related to

3   the unlawful importation, possession with intent to distribute, and distribution of controlled

4   substances. In conducting and participating in these investigations, I have used a variety of

5   investigative techniques and resources, including physical and electronic surveillance and

6   various types of informants and cooperating sources. Through my training, experience, and

7   interaction with experienced agents and other narcotics investigators, I have become

8   familiar with the methods employed by narcotics traffickers in general, and large Mexico-

9   based Drug Trafficking Organizations (DTOs) in particular, to smuggle, safeguard, and

10  distribute narcotics.

11      6.      Based on my experience, participation in the investigation of narcotics

12  organizations, conversations with other agents, and other state and local law enforcement

13  officers who are familiar with narcotics trafficking and distribution, I understand methods

14  used by narcotics trafficking organizations to smuggle and distribute their products. I am

15  familiar with the typical make up and operation of drug trafficking organizations, including

16  the distribution, storage, and transportation of the drugs, the collection of money, which

17  represents the proceeds of drug trafficking, and other criminal activity.

18      7.      Based on my training and experience, I know that persons engaged in the

19  illegal sales and storage of methamphetamine and other controlled substances often use

20  their storage units to manufacture and store the narcotics. These storage units also contain

21  paraphernalia for the packaging, use, sale, and distribution of the narcotics, including

22  baggies, plastic packaging, paper bindles, tinfoil, needles, scales and other weight devices,

23  dilutants, and cutting agents.

24      8.      I know the selling of controlled substances is an ongoing type of business

25  because it takes time to develop 'clientele', the nature of drug abuse requires a steady

26  supply, and the business tends to be too lucrative to abandon. Business records, including

27  receipts, buyer lists, seller lists, recordation of sales, address and telephone lists, ledgers,

28  and logs, are frequently maintained by those engaged in the 'business' of selling controlled

substances. Additionally, I have learned that these individuals may keep business records or other important information in digital form and store them in computers, hard drives, discs, "zip" drives, thumb drives, digital media storage devices, or other hand-held computers, as if they are electronic file cabinets.

9.     I know that those involved in the importation and distribution of narcotics commonly earn income in the form of cash. These persons may store these proceeds and records pertaining to the proceeds, including financial records, bank records, check books, money orders, and money order receipts, in their storage units. Such funds are often used for everyday expenses that maintain and finance their ongoing criminal activity.

10.     I have learned that those involved in the importation and distribution of narcotics often use cell phones to communicate with customers as well as sources and suppliers of narcotics. Cell phones often contain address books, seller's lists, text messages, calls made and received, and photographs that provide evidence of the owner's involvements with the narcotics trade.

11.     Additionally, my training and experience indicates persons dealing in the importation and distribution of controlled substances frequently arm themselves with firearms and ammunition and keep them available either in places they own or store their narcotics, on their person, or in their vehicles. This is primarily due to the large amounts of cash or valuable contraband involved in the drug trade and the fact that people so inclined tend to resort to violence to resist robbery, settle disputes, or thwart capture by law enforcement.

12.     It is my experience, opinion, and belief that the above-described items, documents, and equipment are possessed and maintained by those involved in the importation and distribution of narcotics in the same way and for the same reasons as persons involved in legitimate business keep similar materials – for an indefinite amount of time. I believe that the seizure of such documents and equipment will provide evidence of the events set forth in this affidavit and that such items can be found at the **Target Location**.

**FACTS SUPPORTING PROBABLE CAUSE**

13.     On November 8, 2022, at approximately 6:00 PM, ESTRADA, a United States citizen, applied for entry into the United States from Mexico through the Otay Mesa POE in vehicle lane #3.  ESTRADA was the driver, sole occupant, and registered owner of a 2005 Ford F-150 ("the vehicle") bearing California license plates.

14.     A Customs and Border Protection Officer received two negative Customs declarations from ESTRADA. ESTRADA stated he was crossing the border to go to San Diego, California. ESTRADA was referred to secondary inspection for a computer-generated referral.

15.     A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to a bag of tools located behind the driver's seat of the vehicle.

16.     Further inspection of the vehicle resulted in the discovery of 10 packages concealed inside a bag of tools located behind the driver's seat of the vehicle, with a total approximate weight of 3.24 kgs (7.14 lbs.). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

17.     As this was occurring, ESTRADA was escorted to the secondary office where a pat down was conducted. During this time, a CBPO removed a clear plastic bag containing a crystal-like substance from ESTRADA's left pocket, which later field tested positive for the characteristics of methamphetamine.

18.     During the inspection of personal property recovered from the vehicle, a bag was discovered. Inside the bag's front zippered pocket was a clear bag containing a crystal-like substance, a scale, multiple small clear plastic bags, a brown bag containing a glass pipe, and a purple notebook containing the terms "SHAY" and "ED" written on the pages in two columns with several numbers beneath "SHAY" and "ED," as well as a pen. A CBPO tested the substance found in the clear plastic bag using the Gemini. The substance field tested positive for the characteristics of methamphetamine.

19.     ESTRADA was placed under arrest at approximately 7:20 pm.

20.    ESTRADA was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

21.    Two mobile devices, believed to be used by ESTRADA, were found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from ESTRADA and his vehicle. ESTRADA was the driver and sole occupant of the vehicle and had dominion and control of all the contents.

22.    The United States sought and obtained search warrants for a one-month period for both of the mobile devices. Those warrants were filed as 22-MJ-4119 and 22-MJ-4135.

23.    During my review of one of ESTRADA's mobile devices, I observed a text message conversation between ESTRADA and a contact "Megan That Girl." The conversation contained messages between ESTRADA and "Megan That Girl" that appear to be related to the buying and selling of narcotics. For example, on October 19, 2022, "Megan That Girl" sent a message to ESTRADA stating, "So I have someone here who's going to get a couple of these. He's just waiting for bank to open at 9 then he's gona [sic] come my way. Do you have any more on this side with you? Are you on this side?! Lol I have a feeling you're not. But basically was asking if you were able to bring me more. As much more as you're comfortable with but before like 3-3:30pm?" ESTRADA replied, "How much cash will you have." Later that same day, "Megan That Girl" asked, "You have more yellow right? I have someone who needs more than I have." ESTRADA replied, "You never confirmed if he still wanted them." The next day, ESTRADA sent a message to "Megan That Girl" stating, "So I took the majority of the money already but I'm $1200 short to be able to get 20 of them so they can deliver it within the next couple of hours so if you get any cash let me know right away" and "Megan That Girl" replied, "Yes." In another example, on October 23, 2022, "Megan That Girl" sent ESTRADA a message asking, "How much do I owe you again" and ESTRADA replied, "3375." "Megan That Girl" then asked, "Do you have any more on this side?" and ESTRADA replied, "Yes." "Megan That Girl" replied, "I'm going to have 3k for you" "A little after 9" followed by

1   the messages below:





24.     During an inventory of personal property discovered inside the vehicle, a receipt indicating payment to "All Right Storage – Otay Mesa" with an associated address of 1651 Otay Heights Ct. Bldg. A San Diego, CA 92154 (the **Target Location**) and phone number (619) 661-6555 was discovered. The payment receipt was dated October 10, 2022, at 12:32 PM with a "paid thru" date of December 13, 2022. ESTRADA was listed as the tenant on the receipt with an associated address of 375 South 49th Street Apt. 5 San Diego, CA 92113. The payment was approximately $201.00 USD for Unit A1049 and reflected a current account balance of $0.00 USD.

25.     Based on my training and experience, the presence of a scale, numerous small plastic bags, pay and owe sheets, and communications relating to the distribution of narcotics is consistent with an individual engaging in possession of narcotics with the intent to distribute. Further, it is common for distributors of narcotics to possess and store narcotics in secure locations such as storage lockers. Based on the information above, including ESTRADA'S reference to "storage" and having a receipt linked to the **Target Location**, I believe there is probable cause to search Unit A1049 rented to and used by ESTRADA at All Right Storage – Otay Mesa Storage located at 1651 Otay Heights Ct. Bldg. A San Diego, CA 92154. Furthermore, based on the amounts of narcotics found on ESTRADA's person and in his vehicle, the discovery of items used to package narcotics for sales, and ESTRADA's messages, I believe additional narcotics, items used to manufacture and prepare narcotics for distribution, and records of the importation and distribution of narcotics are kept by ESTRADA at the **Target Location**.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

26.     Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Location** will yield evidence of ESTRADA's violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Waverly Giannotti
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 19th day of January 2023.

Honorable David D. Leshner
United States Magistrate Judge

## ATTACHMENT A

DESCRIPTION OF PREMISES TO BE SEARCHED

Storage Unit A1049 located at All Right Storage – Otay Mesa, 1651 Otay Heights Ct., Bldg. A, San Diego, CA 92154 (the "**Target Location**")

The **Target Location** is a storage unit in a multi-story building located at a cul-de-sac at 1651 Otay Heights Ct. Bldg. A San Diego, CA 92154. The building is tan, white, and brown in appearance and has a white roof. The number 1651 is posted on the west side of the building. The terms "All Right Storage" are posted on the west side of the building in red lettering. There are black gates situated around the building.

Below are two photographs of the building to be searched taken from the west side of the building (1) and north side of the building (2).





# **ATTACHMENT B**
## ITEMS TO BE SEIZED

There is probable cause that the following constitute evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963; and that they will be found in the **Target Location**:

1.  Controlled substances including but not limited to methamphetamine, controlled pharmaceutical drugs (CPD), fentanyl, and heroin, and items used in the use, production, purchase, sale and transfer of CPDs, including prescriptions, receipts from pharmacies, and receipts from doctor's offices;

2.  Paraphernalia for the packaging and use of methamphetamine, CPDs, heroin, fentanyl, and other controlled substances, including baggies, plastic packaging, paper bindles, tinfoil wrapping, bottles, razor blades, mirrors, inhaling devices, hypodermic syringes and needles;

3.  Items used in the transfer and sale of methamphetamine, CPDs, heroin, fentanyl, and other controlled substances, including scales or other weighing devices, dilutants, and cutting agents;

4.  Financial records, bank records, check books, money orders, money order receipts, U.S. currency, and foreign currency that may be proceeds of drug importation and distribution activities;

5.  Business records such as receipts, buyer lists, seller lists, recordation of sales, address and telephone lists, ledgers, logs, or other records;

6.  Electronic devices, including computers, computer hard drives, discs, "zip" drives, thumb drives, digital media storage devices, cellular phones, tablets, and security cameras and corresponding records that may be used to facilitate drug importation and distribution operations;

7.  Firearms and ammunition;

8.  Documents showing possession, dominion, and/or control of the **Target Location**, including but not limited to bills and statements, telephone records, correspondence, mail, rental or lease agreements, and other documents related to the **Target Location**;

9.  Vehicle registration documents of vehicles used to facilitate the importation and distribution of drugs;

All of the above constituting: (1) evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963; (2) contraband, fruits of the same offenses, or other items illegally

possessed; or (3) property designed for use, intended for use, or used in committing these offenses.